JIM GRAY AND SAM ROSS v. THE STATE.

*No. 405.   Decided March 3.*

</div>

1. **Swindling — Indictment.** — See an indictment for swindling by means of " a trick knife," *held,* sufficient.

2. **Same.**—That a party is induced to bet his property upon his own ability to work or operate a swindling device does not prevent the transaction from being a swindle.

3. **Charge.**—Where no objection is made to a charge of the court not strictly correct in every particular, its imperfections, if not calculated to injure the defendant, will not constitute a ground for reversal.

APPEAL from the District Court of Ellis.   Tried below before Hon. J. E. DILLARD.

This appeal is from a joint trial and conviction for swindling, wherein the punishment assessed against each appellant was a term of five years imprisonment in the penitentiary.

Omitting formal averments, the indictment charged, that " Jim Gray and Sam Ross, late of the county of Ellis, on the 27th day of June, in the year of our Lord one thousand eight hundred and ninety-three, with force and arms, in the county of Ellis and State of Texas, did fraudulently take from the possession of Jack Rowland one horse, the same being the corporeal personal property of the said Jack Rowland, without the consent of the said Jack Rowland, and with the intent to deprive the

said Jack Rowland of the value of the same, and with the intent to appropriate it to the use and benefit of them, the said Jim Gray and Sam Ross.

"And the grand jurors aforesaid, upon their oaths, in said court do further present, that Jim Gray and Sam Ross, on the 27th day of June, A. D. 1893, in the county and State aforesaid, by means of false pretenses and devices and fraudulent representations, then and there knowingly and fraudulently made by them to Jack Rowland, did induce the said Jack Rowland to deliver to them, the said Jim Gray and Sam Ross, and the said Jim Gray and Sam Ross did then and there, and by the means aforesaid, acquire from the said Jack Rowland, a certain horse of the value of thirty-five dollars, the same being the personal and movable property of the said Jack Rowland, with the intent to appropriate the same to the use of them, the said Jim Gray and Sam Ross; in this, to-wit: The said Jim Gray and Sam Ross were acting together, and falsely pretended that they were strangers to each other; that said Jim Gray and Sam Ross had in their possession a certain knife and device, which said knife and device had two contrivances, springs, and arrangements so fixed that they could not be seen and discovered by an ordinary person, which said contrivances, springs, and arrangements were intended to and would keep said knife from being opened when shoved and placed in a certain manner, and that both of said contrivances, springs, and arrangements had to be properly placed and shoved before said knife could be opened. That said Jim Gray, acting for himself and for said Sam Ross, approached said Jack Rowland and exhibited said knife to said Jack Rowland; the said Jim Gray, acting for himself and for Sam Ross, did there and. then falsely pretend and fraudulently represent to the said Jack Rowland that said knife and device was controlled in the opening of same by one of said contrivances, springs, and arrangements, and concealing from him the other contrivance, spring, and arrangement, and the fact that there was another contrivance, spring, and arrangement that would keep said knife and device from being opened. That then the said Sam Ross came up and took said knife and device and looked at it; that said Jim Gray and Sam Ross falsely pretended that they were strangers to each other, and the said Sam Ross proposed to bet that said knife and device could not be opened, and said Jim Gray proposed to bet that said Jack Rowland could open said knife and device. And the said Jim Gray, acting for himself and for said Sam Ross, did then and there falsely pretend and fraudulently represent to said Jack Rowland that he, the said Jim Gray, had explained and exhibited to said Jack Rowland the way to open said knife and device, and that said Jim Gray had no money, and said Jack Rowland would not take any chance of losing if he would put up said horse on said bet; and did thereby and then and there fraudulently induce the said Jack Row-

land to put up his horse in the hands of him, the said Jim Gray, and to deliver the said horse to the said Jim Gray.

"When in fact and in truth the said Jim Gray had not explained and exhibited to said Jack Rowland the way to open said knife and device, and the said Jack Rowland could not open said knife and device; and the said Jim Gray and Sam Ross knew that by reason of the other contrivance, spring, and arrangement the said Jack Rowland could not open said knife and device; and the said Jim Gray and Sam Ross then and there knew that said pretenses and representations so made by them to the said Jack Rowland were false. Against the peace and dignity of the State."

Defendants made a motion as follows, to quash said indictment:

"And now come the defendants, by their attorneys, and excepting generally to the indictment in this cause, say the same is insufficient, and charges no offense or offenses against the laws of this State; whereupon they pray judgment.

"And specially excepting to said indictment, they say the same is insufficient, for the following reasons, to-wit:

"1. The two counts, theft and swindling, as charged in said indictment, are conflicting, in that the facts charged in the last count admit the taking of the property with the consent of Jack Rowland, the prosecuting witness, and the first count charges the taking of the property without the consent of the said Jack Rowland.

"2. Because the second count in said indictment, which attempts to charge swindling, fails to charge any offense against the laws of this State, and fails to allege a false pretense as an existing fact or a past event, but charges mere false promises or false professions of intentions.

"3. Said count shows upon its face that if false pretenses or representations were made as charged in said count, that Jack Rowland, the complaining witness, had the means and opportunities of detecting same.

"4. Said count fails to charge an intent upon the part of the defendants, or either of them, to appropriate or deprive Jack Rowland, or any other person, of said property or its value, but charges the intent, or attempts to so charge, by a detailed description of actions, representations which, if true, do not sufficiently charge a fraudulent intent.

"Wherefore they pray that said indictment be quashed; if not quashed in toto, that the second count therein, which attempts to charge swindling, be quashed and the same stricken from said indictment."

This motion to quash was overruled.

Jack Rowland testified: I live in the country, about seven miles south of Ennis. I first saw the defendants, Jim Gray and Sam Ross, at Ennis, in Ellis County, Texas, on the 27th day of June, A. D. 1893, at the "Hood's Big Reunion." One J. F. Beard and myself went to the reunion on the 27th day of June, 1893, and while we were walking around

the grounds, the defendant Jim Gray approached us and began a conversation. He introduced himself, and said that he was an entire stranger there, and that he was from Weatherford. He seemed to be a very nice fellow, and made himself very agreeable, and after we had walked around awhile, we sat down. After we sat down, Jim Gray took a knife out of his pocket and showed it to me. The knife appeared to be an ordinary single-blade pocket knife, with iron handle. I looked at the knife, and could not open it. He then proposed to show me how to open the knife, and showed me a spring in the ends of the handle, and showed us that when the spring was shoved, or pulled out, that the knife could be opened like any other ordinary knife. The spring was in the end of the handle, and when it was shoved up the knife could not be opened, and when pulled out it would open. Jim Gray told me that the spring controlled the opening of the knife, and that any one could open the knife if the spring was shoved or pulled out.

After awhile, and while we still were looking at the knife, the defendant Sam Ross came up to where we were. He seemed to notice us looking at the knife, and asked to see it. He took the knife and looked at it and examined it, and appeared to try to open it, and could not. He then said it could not be opened. Jim Gray said that he would bet that I could open it. Sam Ross said that he would bet $20 I could not open it. Jim Gray said he only had $3, and would bet that, and told me to bet; that he had showed me the secret of opening it. I only had $1 in money. We then fixed up a bet. Sam Ross bet $24 against my watch and $1 I put up and the $3 Jim Gray put up. I was to open the knife while Jim Gray counted ten. Jim Gray held the stakes. I took the knife and tried to open it, and I could not open it. Jim Gray then gave Sam Ross the stakes. Then Jim Gray went up to the grounds. Jim Gray told me that I had not pulled the spring out far enough, and said if I had pulled it out far enough the knife was bound to open; that there was nothing else to keep it from opening. He then showed me again, and I tried the knife, and I could open it, easy. He then asked me if I did not have anything else to bet, so we could get our money back. He said, if he only had money he would bet it. I told him I did not have anything except my horse, saddle, and bridle. He then wanted me to bet my horse, saddle, and bridle, saying that he had showed me everything, and I could not possibly loose. I then consented to bet my horse, saddle, and bridle, and he went and got Sam Ross, and we fixed up a bet of my horse, saddle, and bridle against the watch and $1 I had lost and the $3 Jim Gray had lost. Jim Gray held stakes. I again tried to open the knife, and I could not open it; and Jim Gray gave the stakes to Sam Ross. My horse was worth $35.

Jim Gray and I went down to town; he said he would telegraph and get money and win our money and my horse and watch back. He went

to the telegraph office, and went in and came out, and said he had sent a telegram for $100. We then went down to Lewis Brothers' saloon, and went up stairs. Jim Gray said he felt sick, and wanted to lay down awhile. He said for me to go and knock around awhile and then come back. I went out, stayed a little while, and came back, and the defendant Jim Gray was gone. I hunted for him, but could not find him. This all happened in Ellis County, Texas, on the 27th day of June, A. D. 1893.

Cross-examined: When I bet my horse, saddle, and bridle against the watch and $4 in money, I made a bill of sale to defendant Ross, and it was witnessed by defendant Gray. Defendant Jim Gray held the watch and money and bill of sale while I tried to open the knife. I did not bet for fun. I bet to win. I bet on the strength of what Jim Gray had told me about the knife. Jim Gray and Sam Ross acted like they were strangers to each other. Jim Gray and Sam Ross got up the bets, but Jim Gray did not have any money or anything to bet. When I bet the horse I was only trying to get my watch and money back. After the defendants were arrested I got my horse and watch back.

J. M. Merideth, witness for the State, testified: I live in Waxahachie, Texas. I am sheriff of Ellis County, Texas, and was on the 27th day of June, 1893. I arrested the defendants. I arrested Jim Gray on June 28, at Garrett, in Ellis County, Texas, and a day or two after arrested Sam Ross in Dallas; that is, I had the officers there to arrest him and turn him over to me. I found the horse and watch, claimed by witness Jack Rowland, in the possession of Sam Ross. The property was turned over to Jack Rowland by defendants. When I arrested defendant Jim Gray, I found in his possession a trick knife. It was apparently an ordinary single-bladed iron handle knife, but it had two secret springs or contrivances, which, according to the manner in which they were pushed or shoved, would control the power to open the knife. One was a spring in the handle, in the end away from the jaw of the knife; then the blade was so arranged with a slot or spring contrivance, that when the knife was in its ordinary condition you pull or shove the spring back which was in the end of the knife, and it could be opened; but if you pressed the blade up or towards the jaw of the knife, then you might pull or shove the end spring out, but you could not open the knife. It also had a hole through the handle and blade which, when the blade was shoved up to, the eye or jaw of the knife could be pinned, and then no one could either open the knife, or even shove the blade back so it could be opened. Both of these contrivances were secret, but the end spring could be discovered, as there was a catch, but the other had nothing to indicate it, and no person not up to the trick would likely discern it. I took the knife, but it is now lost, or was stolen by a negro trusty I had

at the jail. He wanted it very badly, and tried to buy it, but the boys refused to sell it.

No brief on file for appellants.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Conviction for swindling Jack Rowland, thereby obtaining from him a horse.

We have carefully examined the indictment in this record, in connection with the objections made thereto. It is sufficient. That Rowland was induced to bet his horse on his ability to open the knife does not prevent the transaction from being a swindle within the provisions of our statute.

The evidence is amply sufficient to support the verdict. Those who by such tricks as are shown in the record obtain the property of others justly deserve to be in the penitentiary. There was no objection made to the charge of the court when it was submitted to the jury. If not strictly correct in every particular, its imperfections are not calculated to injure appellant.

Judgment is affirmed.

*Affirmed.*

Judges all present and concurring.