### JOE GUTHRIE v. THE STATE.

No. 3089.   Decided April 15, 1914.

Rehearing denied May 13, 1914.

**1.—Carrying Pistol—Sufficiency of the Evidence.**

Where defendant was employed by another who claimed to be the owner of certain corn in possession of prosecuting witness to forcibly take from her possession said corn which was on her place, and he thereupon armed himself with a pistol for that purpose and used it, he violated the pistol law, although the said owner may have had a valid legal claim for said corn.

**2.—Same—Own Premises—Place of Business.**

Where the farm upon which the pistol was carried belonged to another, the defendant had no right to carry said pistol there and claim tnat it was his place of business or own premises because he had been employed to forcibly take said property from said farm.

Appeal from the County Court of Red River. Tried below before the Hon. George Morrison.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Chambers & Black,* for appellant.—On question of right to carry pistol: Craig v. State, 60 Texas Crim. Rep., 195, 131 S. W. Rep., 562; Gibbs v. State, 70 Texas Crim. Rep., 278, 156 S. W. Rep., 687, and cases cited in opinion.

On question of exemption on account of place of business and own premises: Coleman v. State, 28 Texas Crim. App., 173; Short v. State, 25 id., 379; Campbell v. State, 28 id., 44; Willis v. State, 15 id., 118; Hardin v. State, 13 id., 192.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of unlawfully carrying a pistol, and his punishment assessed at a fine of $100.

The facts in this case would show J. L. Upchurch was a married man, and in the year 1913 rented land from Dr. Dinwiddie and raised a crop thereon; that in the latter part of October he sold his ungathered corn crop to Turner Devinney in payment of a debt due for groceries, and in a few days thereafter, and before Mr. Devinney had gotten the

corn, he and his wife parted and he had left the place, his wife continuing to live in the house on the rented premises. It appears that on the morning of November 1st, Mr. Devinney employed Bob Swope and W. A. Huddleston to gather the corn, and they went in the field to do so. Mrs. Upchurch went to the field and vigorously protested, and caused these two men to throw the corn they had gathered out of the wagon, and leave the premises. They reported the facts to Turner Devinney, and also told appellant about the circumstances. Roy Elmore testified that he, appellant and C. R. Fogg met Swope and Huddleston, and they told appellant about being run out of the corn field by Mrs. Upchurch, when appellant replied, "That he would gather the corn if Devinney would pay for it." That when Swope and Huddleston told appellant he had better let it alone as he might get killed, appellant said, "He was ready to die, and would gather it for Devinney if he wanted him to." Devinney then told appellant to get some hands and gather the Upchurch corn. C. R. Fogg and Roy Elmore went with him. It further appears from the record that Mr. Devinney told appellant, "That Mrs. Upchurch or her brother-in-law might prevent him from gathering the corn, or might hurt him, and he, appellant, had better carry a gun for protection." Appellant armed himself with a pistol and went to the corn field to gather the corn. Appellant admits he carried the pistol to the Upchurch corn field, but says Mr. Devinney told him it was not against the law for him to do so.

Appellant, Elmore and Fogg all testify that when they got to the field and commenced to gather the corn Mrs. Upchurch appeared on the scene, armed with a pistol, ordered them to desist and throw out what they had in the wagon, and when they refused, she was very abusive, used obscene language and drew her pistol on appellant, when appellant drew his pistol and fired it, as he says, in the ground. After Mrs. Upchurch had further cursed and abused them, appellant said, "He had wasted the first shot but he had no more to waste, and that the one he had shot was all he had to throw away." The woman apparently was frightened and left, going back to the house. Thus it is seen that Devinney and appellant both knew that Mrs. Upchurch was claiming the corn before appellant consented and agreed to go and gather it. It may be that the title of Devinney to the corn was perfect, having bought it from the husband of Mrs. Upchurch, but as they knew that after the separation, Mrs. Upchurch was claiming the corn, the law did not authorize them or either of them to arm themselves with a pistol and go and take the corn by force. Such proceedings as this leads to too many unfortunate homicides for the law to sanction such proceedings. If Mrs. Upchurch had not become frightened when appellant fired his pistol, and had fired back at appellant, there would have been more than likely a dead man or woman in the field that day.

After Upchurch had separated from his wife and left her there on the rented premises, no man had a right to enter thereon without her consent and by force take property therefrom to which she was setting up a

claim. If Mr. Devinney in fact was the legal owner of the corn, after he had been informed by Swope and Huddleston that she claimed the corn and had driven them from the field, he had no legal right to send an armed force in the field and take the corn by force. In this day and time no man can take the law into his own hands, but if his property is wrongfully detained by another the law furnishes him ample remedies. He could have sworn out a sequestration writ, and the officers of the law would have taken charge of the corn, and the right to the corn adjudicated. The contention of appellant, that as Mr. Devinney had bought the corn from the husband, he as the employe of Devinney had a right to arm himself, enter the premises by force and take the corn regardless of the protests of the wife, can not be sustained.

The charge of the court was more favorable to appellant than he was entitled to in law, and as there was no exception reserved to the introduction of testimony, the judgment is affirmed. The contention of appellant that if the testimony brought him within any of the exemptions named in the statute, the verdict should not be sustained, is sound in law, but the facts in this case do not bring him within any of the exemptions. He was not carrying the pistol on his premises nor in his place of business. The premises were the premises of Mr. and Mrs. Upchurch, and if Mr. Upchurch had given him permission to go on the premises armed with a pistol, this would not authorize him in law to do so. No one can give to another permission to carry arms on his premises in violation of law. This was not his place of business, for he was employed by Mr. Devinney at another and different place, and he willingly undertook to engage in this seeming dangerous enterprise—go on the premises of another and forcibly take property therefrom that his employer was claiming, and armed himself with a pistol so as to be able to forcibly take the corn.

If the Upchurch farm can be held to be the place of business of appellant, then every person who has some slight business with his neighbor, or in any portion of the town, or in another part of the precinct of his residence, can claim that while attending to this temporary matter he had the right to carry a pistol with him and keep it on him while transacting this business matter, and such construction would nullify the pistol statute. The cases of Ball v. State, 25 S. W. Rep., 627; Ross v. State, 28 S. W. Rep., 199; Sanderson v. State, 50 S. W. Rep., 348; Page v. State, 25 S. W. Rep., 774; Gibbs v. State, 70 Texas Crim. Rep., 278, 156 S. W. Rep., 687; Craig v. State, 60 Texas Crim. Rep., 195, 121 S. W. Rep., 563, and other cases cited by appellant do not sustain his contention. In the Craig case the appellant had the pistol in the room where he slept and kept his clothes; in the Page case he had the pistol in the bank where he was regularly employed; in the Ross and Ball cases the defendant was residing on the premises where he had the pistol, making it his home for the time being; in the Gibbs case the evidence showed he had the pistol on land he had rented and had control of. The facts in this case come more clearly within the rule announced in McCauley

v. State, 45 S. W. Rep., 576. In that case McCauley had left his home and gone to his employer's house to assist in killing a hog. This "temporary business" did not exempt even though he had the legal right to be on the premises where he had the pistol and was engaged in a lawful business.

The judgment is affirmed.                                    *Affirmed.*

[Rehearing denied May 13, 1914.—Reporter.]